Pearson, J.
 

 In
 
 1767, Henry E. McCulloch conveyed to one Thomas King a tract of land, which is represented in the annexed diagram by the paralellogram A. B. G. O.
 

 In
 
 1794, a grant issued to one McCrackin for the tract of land represented by these letters, T, X, G, R, D, G, J, P, Q,, R, S, (at G.) The grant calls for a post oak,
 
 then North
 
 62 deg.
 
 East,
 
 27
 
 chains to a black
 
 oak, (at R,) then East 49 chains, to a
 
 stake in King's line
 
 (at D,) then North 29 chains to a black oak, his corner (at G,) then East 39 chains to a stake (at J) and around to the beginning.
 

 In
 
 1797, King conveyed his tract of land to one Laughlin.
 

 
 *200
 

 In
 
 1801, Laughlin conveyed to McCrackin the land represented by the letters L. E. H. O, which was the Northern part of the land deeded to King by McCulloch and a small part of McCrackin’s own land represented by the letters D. E. H. G. The deed begins at a poplar (at L.) thence West 130 poles to a corner post oak (at E ) on the next side of the tract, thence North 130 poles to a stake (at H,) thence East 130 poles to a stake (at O,) thence South to the beginning.
 

 In
 
 1807, McCrackin conveyed to one Andrews the land represented by the letters F. (or M.) N. U. Z. G. R. E. (or D.) The deed calls for a post oak in the original line at Z., thence South 30 chains to the old corner post oak (at G.)
 
 then North
 
 62 deg.
 
 East
 
 27
 
 chains to a black oak
 
 (at R.)
 
 then East
 
 49
 
 chains to a stake King’s line
 
 (at E. or D.) then North to the beginning. The lessor claimed under Andrews, and the only question in the case was, did the deed from McCrackin to Andrews, in the call from the black oak (at K.)
 
 “thence East
 
 49
 
 chains to a stake in King’s line,”
 
 run to D. or did it stop at E.? It was proven that there was a post oak at E. marked as a corner, which corresponded in age with the deed from Laughlin to McCrackin in 1801, and a witness swore, that in 1807, when the deed was made by McCrackin to Andrews, a survey was made and they ran the line from K. to E. and from E. to H., and that after his purchase Andrews said, that a fence on the line E. H. was on his line. Several marked line trees were found on the line E. H. It was also proven that McCrackin, after he conveyed to Andrews, cultivated up to the fence at'E. H. for several years, and that Morrison, under whom .the defendant claims, after he purchased in 1818, continued to cultivate up to the same fence, until the year 1821 or ’2, when it was turned out and permitted to grow up as an old field. The defendant claimed under one Morrison, to whom Mc-Crackin conveyed in 1818.
 

 
 *201
 
 His Honor charged, “that King’s limiting the line B. D. G. according to the original calls, the plaintiff would be entitled to recover, unless the defendant could show, that it had been subsequently established elsewhere; that when McCrackin purchased the upper part of the King grant from Laughlin in 1801, he owned the whole land, and it was competent for him then to run the line E H. and establish it, as the line between his original grant and the land purchased of Laughlin. And if the jury believed he did so, that line then became the King line, and would be the line called for in the subsequent deeds, unless there was evidence to fiiow, that it had been after-wards run and established at another place of which there was none. To establish the position, that it was competent for McCrackin to establish the line E. H., upon his purchase from Laughlin, the Court remarked, that if he purchased a part of his own land, he would be estopped from saying it was not Laughlin’s, because he had by his own deed established the line E. H. The Court told the jury, they were to enquire whether the evidence satisfied them that the line E. H. was established in 1801, and if so, they would find for the defendant. But if . the evidence preponderated in favor of the line B. D. G. they would find for the plaintiff.”
 

 His Honor was correct in the position, that B. D. G. being ascertained to be the King line, the call in the deed to Andrews from K., “then East 49 chains to a stake, in King’s line,” must go to the line B. D. G., unless there was something to control it. We think there was nothing to be submitted to the jury as sufficient, if true, to have this effect. There was error in submitting the question to the jury, instead of charging that there was nothing to control the call.
 

 . Admit that in 1801, when Laughlin made his deed to McCrackin, the line E. H. was run and marked and established as the line up to which Laughlin conveyed to
 
 *202
 
 McCrackin, that fact cannot control the call in the deed to Andrews, for it was a matter between Laughlin and McCrackin and although McCrackin has aright to make a line on his own land when he pleased, yet the fact of his doing so could not make that line “the King line,” so as to have any effect in a deed which he afterwards made to Andrews, inasmuch as the establishing of this new line is in no manner recognised or referred to in the deed —the calls are the same as those in the grant to Mc-Crackin — and no allusion is made either to the fact that McCrackin had purchased land of Laughlin or to the fact that the line E. H. had been run and marked. The deed to Andrews does not connect him with these collateral acts, and his title cannot therefore be affected by them.
 

 The testimony that when McCrackin sold to Andrews, a survey was made and they ran from R. to E. and from E. to H.
 
 r
 
 that Andrews afterwards said the fence at E. H. was on his line ; and that McCrackin, and those, under whom the defendant claims, cultivated for many years tap to this fence, cannot have the effect of controlling this call in the deed. It would not be admissible for the purpose of controlling, “corner and distance,” and,
 
 a fortiori
 
 4 it cannot control a call for the line of an adjoining tract.’* ' We are not certain that we comprehend the meaning of his Honor, in what he says, about an estoppel. But we are certain, that the doctrine of estoppel has no application in this case, and the plaintiff has a right to complain of the allusion made in reference to it, as being apt to 'mislead the jury. It may be, that as between Laughlin and himself, McCrackin was estopped from denying, that he had purchased up to the new line, which they had established. But in the same way he was estopped from denying that the State had granted to him up to the King line, and so there was an estoppel against an estoppel, which left the matter “at large.” After Laughlin bad
 
 *203
 
 made the deed, he had nothing more to do with it. The idea that McCrackin was estopped, as against himself, is absurd, and his Honor could not have intended to express it. The truth is, that after McCrackin had become the owner of all of the land, he had a right to sell off to An* drews just as much as he pleased ; and the only question was, how much did he convey ? His deed says he conveyed up to the King line and there was nothing to control it, and give to it the same legal effect, as if it had called for the
 
 line established
 
 by the deed from Laugblin to McCrackin, which is not referred to, and with which Andrews and the lessor of the plaintiff, who claims under him, were in no wise connected. So the doctrine of estoppel was not involved in the case, and the allusion to it had a tendency to mislead the jury.
 

 There must be a
 
 venire de novo.
 

 Per Curiam Judgment reversed and
 
 venire de novo.